# EXHIBIT A

AAMCO Transmissions, Inc.
# Franchise Agreement

This Agreement has been entered into this 5th day of June 19 81, at Bridgeport, Pennsylvania, between AAMCO Transmissions, Inc., a Pennsylvania corporation having its principal office in Bridgeport, Pennsylvania, referred to as "AAMCO", and James M. Dunlap and Russell L. Blackburn referred to as the "Franchisee".

AAMCO has developed methods, techniques, and systems for the operation of centers devoted exclusively to transmission repair. AAMCO has built up substantial business, and valuable good will, by the establishment of such centers throughout the United States and in Canada.

AAMCO makes its experience and know-how available to all its Franchisees in order to assist them in opening and operating a successful AAMCO center. AAMCO makes this and other means at its disposal available to aid in the management, financing and merchandising of the Franchisee's center.

The Franchisee acknowledges that he does and will have full managerial responsibility and authority for the operation of his center; he recognizes that his success, and that of all AAMCO centers, depends on adherence to the highest standards of business practice, and on the maintenance of prompt, efficient, courteous and satisfactory service to the public.

The Franchisee desires to enter into the business of operating an AAMCO center, and to develop the market to its full potential in his locality.

The parties enter into this Franchise Agreement in recognition of these considerations and of the mutual agreements expressed herein.

1.1 **Franchise.** This Agreement is for the operation by the Franchisee of one AAMCO transmission repair center. The location is specified at section 1.2 of this Agreement. This Agreement allows the Franchisee to use the trade name and trademark "AAMCO" in the center; however, the Franchisee may commence operation of his transmission center under the name "AAMCO" only upon fulfillment of the following conditions:

   (a) Franchisee must secure a location approved in writing by AAMCO;

   (b) Franchisee must successfuly complete AAMCO's training course;

   (c) Franchisee must equip and inventory the center/location according to AAMCO's standards before opening; this requirement includes the appearance of the center, all to be done in accordance with sections 8.1 and 9.2 of this Agreement.

   (d) Franchisee must secure insurance as required by section 12.1 of this Agreement.

1.2 Location. The center shall be located as follows:

(   ) County:        ( XXX ) SMSA:        (   ) CMA:        (   ) Other:
Norfolk/Virginia Beach/Portsmouth, Virginia/North Carolina

Address: 1366 South Military Highway, Chesapeake, Virginia 23320

During the term of this Agreement, and any renewal hereof, the Franchisee shall operate his center at no other address. Franchisee shall not move or relocate his center without the prior written consent of AAMCO.

1.3 **Market.** AAMCO expressly reserves the right to grant additional franchises in the same county or standard metropolitan statistical area. The number of centers will be based upon then current motor vehicle registrations and the marketing program of AAMCO; the number of franchised centers shall be limited to a maximum of one center for each 20,000 motor vehicle registrations.

2.1 **Trademark.** The Franchisee acknowledges that AAMCO is the owner of valid trademarks and service marks using the mark "AAMCO". The Franchisee expressly agrees not to use any other mark or name in the operation of his center. In addition, the Franchisee agrees not to register the word "AAMCO" as part of its firm or corporate name.

3.1 **Deposit.** AAMCO acknowledges payment by the Franchisee of a deposit of $12,500.00 at the time of this Agreement. The application for franchise made by the Franchisee and this deposit does not permit the operation of a center without the fulfillment of conditions (a), (b), (c), and (d) of section 1.1 of this Agreement. In addition the Franchisee must receive approval of a Board of Review of AAMCO and satisfy all requirements of the Board. ~~An additional $_____ is due prior to commencement of six (6) weeks training school. The remaining sum $_____ is due during attendance at the training school.~~

3.2 **Refundable.** AAMCO may cancel this Agreement at any time prior to opening for failure by the Franchisee to fulfill any requirements of AAMCO and refund the deposit. This refund shall be AAMCO's sole responsibility to the Franchisee and this Agreement shall then be null and void.

3.3 **Portions Non-Refundable.** In the event the Franchisee does not fulfill conditions (a), (b), (c), or (d) of section 1.1 of this Agreement, then AAMCO shall refund part of the deposit only. The non-refundable portion of the deposit is a reimbursement for expenses associated with the training of Franchisee and the processing of his application including but not limited to expenses of schooling and real estate department expenses. This refund shall be AAMCO's sole responsibility and this Agreement shall then be null and void.

AT-80-1 (10)                              (1)

3.4  Deposit Non-Refundable. In the event that the Franchisee unreasonably delays in opening his center or re- locations approved by AAMCO, then the entire deposit is non-refundable. The deposit is a reimbursement for the rights granted to the Franchisee by AAMCO, for the expenses associated with the training of the Franchisee and the processing of his application, and for the delays incurred as a result of the Franchisee's failure to open. In no event shall a period of less than eight (8) months be considered unreasonable.

4.1  License Fee. As an initial service and license fee the Franchisee agrees to pay the sum of $22,500.00 Any deposit made with this Agreement shall be credited towards this initial fee.

4.2  Franchise Fee. Commencing with the opening of his center, the Franchisee agrees to pay a weekly franchise fee to AAMCO of nine (9) % of the gross receipts for the preceding week. "Gross receipts" shall mean all forms of consideration received for parts or services in the center, including supplies and accessories, regardless of whether for standard or automatic transmissions, whether from wholesale, fleet, commercial or retail business.

4.3  Business Reports. Commencing with the opening of his center, the Franchisee agrees to mail to AAMCO an accurate report of gross receipts received during the preceding week, along with such other information or reports as AAMCO may request. These should accompany a check or money order for the amount required under section 4.2, and should be mailed so as to be received no later than Tuesday of each week. Franchisee acknowledges that failure to furnish complete and accurate reports of business on a timely basis deprives AAMCO of the means to control and supervise the use of its marks, or to communicate with members of the motoring public who are customers of AAMCO's Franchisees.

5.1  General Policies. Franchisee agrees that for the term of this Franchise Agreement he shall give his personal loyalties to the goals of the AAMCO chain in order to enhance the growth of AAMCO's national identity, the reputation of AAMCO as a special- ist in the transmission field, and the quality of repairs associated with the name AAMCO.

Franchisee agrees that he shall not employ or attempt to employ any person presently employed by AAMCO or by another franchisee of AAMCO. Franchisee further agrees that he will not employ any such person if the individual had been so employed within a period of three months. Finally, the Franchisee agrees that before hiring any person formerly employed by AAMCO or by a Franchisee of AAMCO he will obtain a satisfactory reference from AAMCO or the Franchisee.

5.2  Performance Standards. Except as otherwise approved in writing by AAMCO, which approval shall not be unreason- ably withheld, Franchisee agrees that during the period of this agreement he will devote his full time, energy and effort to the operation of his center, and agrees not to engage in any other business either at the location of his center or at any other location.

The Franchisee agrees that he will comply with all procedures which AAMCO establishes in order to assure a quality program of transmission service. Franchisee acknowledges that AAMCO has the right to visit and enter the center at reasonable times, for the purpose of inspecting the center, its equipment and inventory, and to determine the nature and quality of service rendered there, including the manner and method of the center's operation by the Franchisee.

The Franchisee agrees that he will deal fairly and honestly with each customer, and render prompt, workmanlike, courteous, and willing service in his center. The Franchisee agrees to handle all customer complaints and adjustments in the same fashion whether they arise from his center or from any other AAMCO franchisee. The Franchisee specifically agrees to conduct his center in a manner such that it will not detract from or bring into disrepute the trademark or name "AAMCO".

All personnel whom the Franchisee employs shall conform to the experience or skill standards which AAMCO prescribes.

In his operation of the center the Franchisee agrees to use only such forms as AAMCO specifically prescribes or authorizes including without limitation multicheck, repair order, warranties, and reporting forms.

Franchisee agrees to vigorously and aggressively promote the repair of transmissions making the greatest possible use of the advertising, promotional, and merchandising techniques and materials provided by AAMCO. The Franchisee specifically agrees to participate in all sales and promotional campaigns or activities of AAMCO and to purchase the printed materials and forms which are used in such activities.

5.3  Appearance Standards. The Franchisee agrees to keep his center premises in a clean, wholesome, attractive, and safe condition, and to keep it in good maintenance and repair.

The Franchisee agrees to maintain the interior and exterior painting and decor, and furnishings of his center in such a manner and form as may be required by AAMCO.

The Franchisee agrees to purchase and display in or about his center only the signs, logos or other materials which are re- quired or approved by AAMCO.

5.4  Maintenance Standards. Franchisee recognizes that it is in the mutual of interest of both parties to this Agreement that the AAMCO center he operates shall be equipped and maintained in accordance with the highest standards of quality, and Franchisee specifically agrees to follow the directions of AAMCO in this regard, subject to the observance of any applicable laws.

Franchisee agrees to conduct his center in accordance with AAMCO's standards.

5.5  Non-Disclosure. The Franchisee agrees that he will not furnish any information concerning AAMCO's service pro- gram, operations techniques, advertising or promotion ideas, or concerning the financial status of AAMCO to anyone; provided, that nothing in this section shall prevent the use of these materials or of this information by employees in the Franchisee's AAMCO center.

The Franchisee acknowledges that AAMCO is the sole owner of all rights to the AAMCO Merchandising Program, and of all books, manuals or documents provided to the Franchisee for the operation of his center.

The Franchisee recognizes that AAMCO has expended substantial funds and effort in the development of its merchandising program and techniques, and he specifically agrees not to engage in competition with AAMCO using any training or policy manuals, catalogues, lists, forms or aids provided by AAMCO.

6.1  Obligations of AAMCO. AAMCO agrees that before AAMCO grants any additional franchise in the county or stand- ard metropolitan statistical area in which Franchisee is located, it will conduct a thorough marketing study and will receive and consider input and comments from Franchisee.

Prior to the opening of his center, AAMCO will make available to the Franchisee its customary training and indoctrination course concerning the operation of an AAMCO center. After the opening of his center, AAMCO may provide a training program or programs to the Franchisee and to such of his employees as AAMCO may designate. Expenses of travel and lodging incurred by the Franchisee for his initial training program will be borne by AAMCO. All expenses of travel, lodging, meals and other living expenses for the Franchisee or his employees in subsequent programs shall be borne and paid by the Franchisee.

AAMCO agrees to make available to Franchisee any and all improvements and changes to the AAMCO merchandising system to the same extent and in the same fashion as they are made available to all Franchisees of AAMCO.

AAMCO agrees to assist a Franchisee with regard to the management and operation of his AAMCO center; AAMCO agrees to counsel and make available to the Franchisee the benefit of AAMCO's experience, know-how, guidance and information in connection with the operation of his AAMCO center.

AAMCO agrees that it will assist in the design and purchase of advertising promoting the business of AAMCO Franchisees and the services they sell. AAMCO agrees that it will advance the expenses of the production and distribution of television and radio tapes, newspaper mats, display advertising and other similar items referred to under section 7.1 of this Agreement. AAMCO agrees to make available to the Franchisee its experience, know-how, guidance, and counseling with respect to national, regional, and local advertising, and combinations thereof, including the selection of particular media and advertising content, as well as the choice of agencies for the purchase and use of these advertising techniques.

AAMCO agrees to sell to the Franchisee during this Agreement the quantities of those AAMCO products mentioned at the Appendix A of this Agreement, as the Franchisee wishes from time to time to order; provided, however, that AAMCO may at any time in its own discretion discontinue the sale of any product or products, if in AAMCO's opinion it is unprofitable, not feasible, or otherwise undesirable to continue such products.

7.1  National Advertising. The Franchisee agrees that it is essential for the growth of the AAMCO chain to participate in advertising programs at the national level. Franchisee agrees to pay his proportionate share of "National Advertising" and publicity in accordance with reasonable formulas provided by AAMCO. Payment for National Advertising billings and costs shall be made in accordance with AAMCO's instructions.

7.2  Local Advertising. The Franchisee acknowledges that it is essential to participate in advertising programs and promotional activities at the local level. The Franchisee specifically agrees to adhere to a local advertising budget developed with the assistance of AAMCO.

The Franchisee agrees to share local advertising expenses with other franchisees in related, adjoining, or overlapping Areas of Dominant influence, or where coverage from local advertising may permeate, based on formulas provided by AAMCO.

The Franchisee acknowledges that AAMCO reserves the right to approve an advertising agency, which approval shall not be unreasonably withheld, and Franchisee agrees to place advertising only with an agency approved by AAMCO; Franchisee agrees to pay promptly fees which become due to an agency approved by AAMCO.

The Franchisee acknowledges that AAMCO reserves the right to approve an advertising agency, and Franchisee agrees to place advertising only with an agency approved by AAMCO; Franchisee agrees to pay promptly fees which become due to an agency approved by AAMCO.

If the Franchisee fails to pay promptly an amount due his advertising agency or his local AAMCO advertising group or pool, then either AAMCO, or all other AAMCO franchisees in the local advertising group or pool of which Franchisee is a member, or the local advertising group or pool shall be entitled to recover the amount due from the Franchisee. The Franchisee recognizes that all local advertising inures to his benefit and to the benefit of all franchisees in the local advertising group or pool. Franchisee acknowledges that despite failure to contribute his proportionate share, local advertising expenditures confer substantial benefits on him, and further acknowledges his responsibility for payment therefor.

AAMCO specifically reserves the right to have or allow the local advertising group or pool seek the enforcement of this obligation. Franchisee agrees that any dispute between Franchisee and the local advertising group or pool shall be subject to binding arbitration as provided in Section 22.1 of this Agreement.

Franchisee agrees that no advertising shall be employed by him unless and until its content is approved in writing by AAMCO.

Franchisee specifically agrees to participate in the national Yellow Pages program of AAMCO and agrees not to place Yellow Pages advertising in any other manner.

7.3  National Creative Advertising. The Franchisee agrees to pay his proportinate share of the "National Creative Advertising" fund in accordance with the formulas which will be provided by the National Creative Committee and administered by AAMCO. Payment for National Creative Advertising funding requirements shall be made to AAMCO in accordance with its instructions.

8.1  Signs. Franchisee agrees to erect in and outside of his center only such signs as are approved by AAMCO. No other signs regardless of content, size or construction may be erected or used.

9.1  Standards and Specifications for Equipment and Inventory. AAMCO shall fix and determine all standards and specifications for the equipment, supplies, parts, and assembly sets used by Franchisee in his AAMCO center. Franchisee may purchase these items from any source, so long as they conform to these standards and specifications. AAMCO agrees to furnish these standards and specifications to the Franchisee, or to a vendor or manufacturer, without charge.

9.2  Original Equipment, Supplies and Inventory. The Franchisee agrees that prior to the opening of his center he will purchase the equipment, supplies and inventory listed at Appendix A of this Agreement. The Franchisee will submit to AAMCO receipted invoices from the suppliers for any of these items which AAMCO may request and shall certify to AAMCO, if requested, that the items comply with the standards and specifications of AAMCO.

If the Franchisee requests to purchase these items or any of them from AAMCO, AAMCO agrees to supply them at the cost set forth at Appendix A; provided, that if prior to delivery the price to AAMCO shall increase, then AAMCO may proportionately increase the price to the Franchisee. If any item is not available at the time of request, then AAMCO may substitute merchandise of a similar quality, and adjust the price, after notice to the Franchisee.

9.3  Operating Inventory. The Franchisee acknowledges that the consumer acceptance, quality, and standardization of parts and assembly sets sold by AAMCO, and agrees that the use exclusively of parts and assembly sets sold by AAMCO (or parts and assembly sets which comply with AAMCO's specifications) is an essential condition of the performance of this Agreement. Franchisee agrees to purchase exclusively parts and assembly sets sold by AAMCO (or parts and assembly sets which comply with AAMCO's specifications.) At the request of AAMCO Franchisee will submit a certification that he uses parts and assembly sets which comply with AAMCO's specifications. Further, Franchisee agrees that at the request of AAMCO he will submit information about the purchase of his parts and assembly sets, including without limitation, invoices, lists of vendors and manufacturers from whom the Franchisee purchases, and actual parts and assembly sets for testing and examination. AAMCO in its discretion shall determine what information is necessary in order to perform such testing or examination.

9.4 **Product Warranties.** There are no warranties, express or implied, made by AAMCO under this Agreement for the products purchased by the Franchisee, including the implied warranty of MERCHANTABILITY.

10.1 **Warranty Program.** The Franchisee agrees to honor each warranty presented by an AAMCO customer in accordance with its terms, regardless of whether the service was rendered at the center or at some other authorized AAMCO center. The Franchisee agrees to comply at all times with AAMCO's policies concerning the AAMCO warranty program.

10.2 **Warranty Payment Rates.** The Franchisee shall be entitled under this Agreement to receive from another AAMCO center the costs of supplies, accessories and parts which the Franchisee uses in honoring the warranty, plus a sum of money based on either an hourly rate for labor, or a flat fee, depending on the extent of repairs required. The payment rate used in making payments under this section, will be determined by AAMCO and published to all Franchisees.

The Franchisee agrees to pay within ten (10) working days to any other AAMCO center the amount due to such other center for the honoring of a warranty issued to a customer of the Franchisee. If the Franchisee fails to pay promptly any amount due under this section, AAMCO shall be entitled to recover such amount from the Franchisee for the benefit of the other AAMCO center, or to credit such other center for money which may be due and owing to the Franchisee for such payments.

10.3 **Prohibition Against Other Warranties.** The Franchisee agrees to make no warranties or guarantees other than those contained in the printed forms of warranty issued or approved by AAMCO. There are no other warranties express or implied made by AAMCO to the customer in connection with any product furnished by AAMCO under this Agreement other than the printed form approved by AAMCO, which warranty is made by the Franchisee to the customer and not by AAMCO to either the customer or the Franchisee.

11.1 **Accounting Forms.** The Franchisee agrees to keep true and correct books and records according to directions of AAMCO, and to employ such record keeping systems as AAMCO may request; the Franchisee agrees to promptly deliver to AAMCO records, reports and copies of tax returns which AAMCO may request. The Franchisee agrees to use exclusively numerically certified work or repair orders provided by AAMCO and to furnish bank deposit slips or verification of cash receipts by the Franchisee.

11.2 **Inspection of Records.** AAMCO's representative may enter the Franchisee's center to inspect books and records and to verify the accuracy of the Franchisee's reports. Franchisee agrees to keep its books and records available in the center at all times, or to make them available there upon request by AAMCO.

11.3 **Penalties.** If an inspection reveals that Franchisee's actual gross receipts are greater than Franchisee's reported receipts by two percent (2%) or more, then he shall pay to AAMCO immediately any deficiency in franchise fees together with interest on that amount at the rate of eleven percent (11%) per year calculated from when such fees should have been paid. The Franchisee also agrees to reimburse AAMCO for any and all expenses connected with such inspection, including but not limited to reasonable accounting and attorneys fees.

11.4 **Financial Statements.** The Franchisee agrees to submit to AAMCO within 60 days after the end of each year a Profit and Loss Statement for the year and a Balance Sheet as of the last day of the year. In addition, within 60 days after the end of each semi-annual period, the Franchisee agrees to submit to AAMCO a Profit and Loss Statement for the previous 6 months and a Balance Sheet as of the last day of the 6-month period. All statements required by this paragraph may be unaudited but must be prepared by an accountant, and, unless otherwise specified by AAMCO, shall be in accordance with generally accepted accounting principles. All references in this section to "year" of the Franchisee shall mean either calendar or fiscal year, as adopted by the Franchisee; Franchisee may keep its books and records on either a calendar year or fiscal year basis.

12.1 **Insurance.** Franchisee agrees to purchase and maintain at his own expense insurance against all types of public liability, including coverage for AAMCO as an additional insured. In no event shall the amounts of coverage be less than the following amounts; bodily injury $250,000. each person, $500,000. each occurrence; property damage $100,000. each occurrence. Franchisee shall furnish AAMCO with certificates of such insurance including the insurance upon AAMCO, along with satisfactory evidence that premiums have been paid. Each certificate shall provide that the policy may not be cancelled as to AAMCO without 30 days prior notice to AAMCO.

Franchisee shall pay AAMCO reasonable costs and expenses, including reasonable attorneys' fees, incurred by AAMCO in connection with any proceedings arising out of this provision.

12.2 **Indemnity Agreement.** Franchisee agrees by this Agreement to defend and to hold harmless and indemnify AAMCO from any and all claims, demands or suits of any kind, and to pay to AAMCO all expenses and liabilities which may be associated with such claims, demands or suits, which are based on or arise out of or relate in any way to the operation or the condition of the Franchisee's center. This Agreement to indemnify AAMCO shall be given effect whether the claim arises indirectly or directly out of the center's operation, Franchisee's conduct of his business there, the ownership or possession of real or personal property there, or from or by any act of negligence, omission, or willful conduct by the Franchisee or by any of his employees, servants, or agents.

The Franchisee also agrees by this Agreement to pay on behalf of AAMCO any and all fees, costs, or other expenses which AAMCO reasonably incurs as a result of an investigation or defense of any such claim, including reasonable attorneys' fees.

12.3 **Independent Contractor.** The Franchisee acknowledges that under the terms of this Agreement he is not an agent, employee, or servant of AAMCO for any purpose whatsoever. Franchisee agrees that he shall not hold himself out as an agent, employee, or servant of AAMCO under any circumstances for any reason whatsoever. Franchisee is an independent contractor and is not in any way authorized to make a contract, agreement or promise on behalf of AAMCO, or to create any implied obligation on behalf of AAMCO. Franchisee specifically agrees that he shall not do so.

13.1 **Security Deposit.** During the life of this Agreement the Franchisee shall deposit with AAMCO weekly along with his weekly business reports and franchise fees an amount as security for compliance with all the provisions of this Agreement. The amount of these deposits shall be a sum equal to 3% of the gross receipts for the preceding week from the Franchisee's center. These deposits shall be retained by AAMCO and AAMCO shall have the right to reimburse itself or others, including customers of the Franchisee, from this account for any damages or defaults which may be sustained by AAMCO or others as a result of failure by the Franchisee to comply with any provision of this Agreement. AAMCO has sole and absolute discretion in determining the amount of reimbursement from this account, and agrees to act reasonably in making such determinations.

The Franchisee acknowledges that the creation and use of this account is a condition of the franchise and is intended to maintain a high level of customer satisfaction, and to minimize or resolve customer complaints.

It is agreed that AAMCO may retain the security deposit required by this provision until the amount in the account reaches the sum of $3,000. It is agreed that AAMCO may use the funds to cure any default by the Franchisee under this Agreement and to defray expenses, damages or attorney's fees of AAMCO or others reasonably necessary to clear any such default, including refunds to customers of the Franchisee, as AAMCO may determine. Any sum used for these purposes shall be replenished in this account from the next security deposit payment.

Any amount remaining in the said account above the sum of $3,000 shall be refunded to the Franchisee within forty-five (45) days after the close of the next succeeding calendar quarter.

AT-80-1 (10)                                                (4)

AAMCO may send written notice to the Franchisee of defaults calling for action under these provisions to the Franchisee's last known address. The Franchisee hereby authorizes AAMCO to apply the monies in this account for the purposes specified in this provision without prior actual notice to the Franchisee that said monies have been applied.

14.1 _Defaults in Payments._ The Franchisee agrees to pay all invoices from AAMCO for merchandise or other items under this Agreement in strict accordance with the payment and credit terms applicable to them when they are issued. Any such amount not so paid when due, as well as any amount due from the Franchisee under any section of this Agreement, shall bear interest at the annual rate of 6% from thirty (30) days after the due date until the time of payment. The payment of such interest will not be deemed to allow delay in the payment of those invoices or other invoices or amounts. The Franchisee agrees further to pay when due any bills or other amounts owed to third parties, especially under section 7.2 of this Agreement, or under any other purchasing arrangement in which AAMCO may be involved; but AAMCO shall not by virtue of such an arrangement become liable to any such third party on the account of the Franchisee.

In the event that the Franchisee is in default in the payment of any franchise fee, operation fee, invoice for parts, invoice for advertising, or for any other amount due to AAMCO under the terms of this Franchise Agreement, including an amount which may be due to an advertising association, pool, or agency under section 7.2 of this Agreement, then in any and all actions which may be brought for the amount in default, AAMCO shall be entitled to recover the amount in default, with any interest thereon, and costs of the action together with a reasonable attorney's fee. In the event that a local advertising association of AAMCO dealers, or "pool" becomes entitled to recover by virtue of such an action pursuant to section 7.2 of this Franchise Agreement, then the Franchisee acknowledges that such an association shall also be entitled to recover in addition to any judgment an amount equal to the costs and reasonable attorney's fees therefor.

15.1 _Assignments._ This Agreement is a personal obligation of the undersigned Franchisee, and his rights to the use of AAMCO's service marks and trademarks are not assignable or transferrable under any circumstances except in strict compliance with the provisions herein.

(a) In the event of Franchisee's death, his rights shall pass to his heirs or next of kin provided that they shall immediately attend an AAMCO training course as provided for in this Agreement. Such persons must attend the AAMCO operators training course prior to the third offered such class from the date of the death of the Franchisee. Failure to do so will result in the termination of all rights conferred under this Agreement.

(b) If the Franchisee, as an individual, desires to transfer his rights under this Agreement to a corporation he may do so only upon the following terms and conditions:

(1) The Franchisee's name remains on the Franchise Agreement and the corporation is added as a co-franchisee on the Franchise Agreement.

(2) The corporation be newly organized and its activities be confined exclusively to acting as an AAMCO Franchisee under this Agreement.

(3) Franchisee is the owner of all of the stock of the corporation, and is the principal executive officer.

(4) All money obligations of the Franchisee to AAMCO must be satisfied.

(5) The corporation and all the officers of it sign an agreement with AAMCO assuming jointly and severally all obligations of the Franchisee under this Franchise Agreement. It is expressly understood that the assumption of the Franchisee's obligation by any corporation does not limit Franchisee's personal obligations under this Agreement and the Franchisee and the corporation shall be jointly and severally liable.

(6) The Franchisee agrees that this Franchise Agreement will not be transferred to a corporation, or to an individual by transfer of stock, or by any other means.

(c) If the Franchisee has organized a corporation, the capital stock should not be sold, assigned, pledged, mortgaged or transferred without the prior written consent of AAMCO. There may be a sale of all of the Franchisee's capital stock on the same conditions mentioned above in this section, to a purchaser as though the person acquiring such stock were the purchaser under section 15.2 of this Agreement. All stock certificates shall have endorsed upon them the following:

"The transfer of this stock is subject to the terms and conditions of a Franchise Agreement dated June 5, 19 81, between AAMCO Transmissions, Inc., and James M. Dunlap and Russell L. Blackburn."

(d) If the Franchisee is a partnership and all partners desire to transfer the Franchise to a corporation, they may do so only upon the same terms and conditions as set forth above, provided that the partners own all the stock of the corporation and are the principal executive officers thereof. The right of any partner to sell, assign, pledge, mortgage or transfer his interest shall be subject to the same conditions governing the sale, assignment, pledge, mortgage or transfer of capital stock of a corporation as set forth above.

(e) Franchisee shall mean each partner who is an AAMCO Franchisee or each stockholder who is an AAMCO Franchisee, and each such individual shall be subject to all of the provisions of this Agreement, jointly and severally.

(f) If a corporation is a co-franchisee, then the corporation shall disclose to AAMCO the names and addresses of all officers and directors and shall whenever there is any change, immediately notify AAMCO of such change. Upon the change of any officer or directors, a new and then current form of AAMCO's Franchise Agreement must be executed.

15.2 _Sale._ If the Franchisee hereunder desires to sell his rights, he may do so provided that the purchaser is first approved by AAMCO, and provided that the purchaser execute AAMCO's then current form of Franchise Agreement at the fee structure provided below. AAMCO agrees to approve any such prospective purchaser if credit ratings are satisfactory, he has good moral character, has a reputation and business qualifactions satisfactory to AAMCO, and provided that any and all financial obligations of the Franchisee are fully paid and satisfied. Such satisfaction includes any outstanding accounts which a Franchisee may have with his advertising agency, any sums due under any local or national advertising program, and any amounts due by way of a default or other provision of this Agreement. Franchisee and other person or persons having control of the affairs of a corporate Franchisee shall execute a General Release of all claims against AAMCO and Termination of Franchise, and Franchisee shall pay AAMCO the sum of $1,500 for legal and other expenses in connection with the administration and approval of this sale. Ownership of Franchisee's AAMCO center may not be transferred until a purchaser has completed training courses which may be provided for in the then current form of Franchise Agreement.

AT-80-2 (10)   (5)

(1) If the Franchisee sells his AAMCO center without the aid or assistance of AAMCO and the purchaser is approved by AAMCO, then the purchaser must sign a current form of the Franchise Agreement. The purchaser has the option of signing an agreement for only the balance of the Franchisee's term at the franchise fee being paid by the Franchisee; or, of signing an agreement for a fifteen (15) year term, the first portion of the term will be for the balance of the Franchisee's term at the franchise fee being paid by the Franchisee, and the second portion of the term will be for the remainder of the fifteen (15) year term at the franchise fee being charged as of the time of the purchase.

(2) If AAMCO assists the Franchisee in the sale of his center and the purchaser is approved by AAMCO, then the purchaser must sign a current form of the Franchise Agreement for a fifteen (15) year term at the franchise fee being charged as of the time of the purchase.

15.3 <u>Attempted Sale, Assignment or Transfer.</u> If the Franchisee attempts to sell, assign or transfer his rights under this Agreement without following the procedures required by this Agreement, then the Agreement shall terminate automatically pursuant to these provisions. In that event, AAMCO retains all moneys of the Franchisee which are being held under deposit, or otherwise, to be applied as AAMCO may elect towards liquidated damages or towards other damages which may be awarded to AAMCO as a result of termination of this sale, assignment or transfer or attempt to sell, assign or transfer Franchisee's AAMCO center.

15.4 <u>Notification of Resale.</u> The Franchisee agrees to submit to AAMCO a copy of any written offer or a statement from the Franchisee of all the terms of the proposed sale and the identity of any proposed purchaser before consummation of an agreement of sale.

16.1 <u>Duration of the Franchise.</u> This Franchise Agreement shall begin as of the date set forth above, and shall continue for a term of fifteen (15) years. Unless either party gives written notice of its intention not to renew the agreement at least one (1) year prior to the expiration of the fifteen (15) year term, then this Franchise shall be renewed for fifteen (15) years. Failure to renew by AAMCO will be based on good cause; the parties agree that "good cause" shall be defined to include the following:

(a) Any default set forth in Section 18.1 of this agreement notwithstanding compliance with paragraph 18.1(b); or

(b) Any cause that in AAMCO's reasonable estimation brings discredit upon its trademarks and tradenames or seriously interferes with AAMCO's legitimate business interests.

In connection with any renewal of the Agreement, the Franchisee agrees to execute a Franchise Agreement of the type then currently being used by AAMCO. AAMCO expressly reserves the right to increase the franchise fee upon renewal in accordance with its then current policy.

17.1 <u>No Waiver by AAMCO.</u> AAMCO's failure to insist upon strict compliance with all provisions of this Agreement, except section 21.1, shall not be a waiver of its right to do so; delay or omission by AAMCO respecting any default shall not affect its rights respecting any subsequent defaults.

18.1 <u>Termination.</u>

(a) AAMCO may terminate this Agreement by giving written notice of termination to the Franchisee upon the occurrence of any of the following:

(1) A breach by the Franchisee of section 5.2 of this Agreement.

(2) If the Franchisee unreasonably delays in opening his center. In no event shall a period of less than eight (8) months be considered an unreasonable delay. In the event that this Agreement is terminated under this subsection, then AAMCO has the right to elect to retain the down payment made by the Franchisee as liquidated damages.

(3) If the Franchisee terminates or attempts to terminate this Agreement for any reason. If this Agreement is terminated under this subsection then AAMCO may elect to retain the down payment made by Franchisee as liquidated damages or as against compensatory and punitive damages which may be sought under this Agreement.

(4) In the event that Franchisee is declared insolvent or bankrupt by any court, or makes an assignment for the benefit of creditors, or in the event that a receiver is apppointed for the Franchisee's business, or the Franchisee is unable to continue in business, or in the event of the sale, insolvency or termination of the business operated pursuant to this Agreement, or in the event that any proceedings demanded by the Franchisee under a provision of the Federal Bankruptcy Act or any other laws for the relief of debtors are commenced, or in the event Franchisee becomes the involuntary subject of any such proceeding, which proceeding continues undismissed for a period of thirty (30) days.

(5) Failure to maintain current payments to an advertising agency and/or local advertising group established pursuant to section 7 of this Agreement.

(6) If the Franchisee shall commit violations of any provision of this Agreement.

(7) If the Franchisee closes his center for any reason and fails to reopen within ten (10) days from the date of such closing.

(8) If the Franchisee sells or attempts to sell, transfer, or assign his rights under this Agreement without the approval of AAMCO as required by this Agreement.

(b) Upon receipt of notice pursuant to Paragraph 18.1(a), Franchisee shall have thirty (30) days within which to cure completely any such default. Failure of the Franchisee to effect such cure within the thirty (30) day period shall result in the immediate termination of this Agreement. It shall be Franchisee's responsibility to advise AAMCO of its attempt to cure any default.

(c) Any notice of termination which is based, in whole or in part, upon the fraudulent acts of Franchisee shall be effective upon receipt thereof by Franchisee, and the provisions of subparagraph 18.1(b) shall not be applicable thereto.

19.1 <u>Procedures After Termination.</u> Upon the termination of this Agreement Franchisee shall cease to be an authorized AAMCO Franchisee and shall:

(a) Promptly pay AAMCO all sums due and owing.

(b) Immediately and permanently discontinue the use of the mark AAMCO and all similar names or marks, and of any other designation tending to indicate that the Franchisee is an authorized AAMCO Franchisee.

(c) Promptly destroy or surrender to AAMCO all signs, stationery, letterheads, forms, printed matter and advertising material containing the mark AAMCO, all similar names or marks or any other designation tending to indicate that the Franchisee is an authorized Franchisee of AAMCO.

AT-80-2 (10)   (6)

(d) Immediately and permanently discontinue all advertising as an authorized AAMCO dealer.

(e) Promptly transfer to AAMCO or AAMCO's designee each telephone number listed under the designation AAMCO or any similar designation, and execute such instruments and take such steps as AAMCO may require to accomplish the transfer of each such telephone number.

(f) Sell all inventories on hand to AAMCO at the price then being charged by AAMCO to authorized AAMCO dealers, less freight and handling costs.

(g) Refrain from doing anything that would indicate that Franchisee is or ever was an authorized AAMCO dealer. Franchisee further agrees that for a period of 1 year following a termination of this Agreement he will not directly or indirectly engage in the transmission repair business within a radius of 10 miles of the subject center or of any other AAMCO center.

(h) The termination of this Agreement shall not affect, modify or discharge any claim, rights, or causes of action which AAMCO may have against the Franchisee, under this Agreement or otherwise, for any reason whatsoever, whether such claims or rights arise before or after the termination.

20.1 Applicable Laws. Franchisee agrees to comply with all federal, state, county and municipal laws and regulations which may be applicable to the Franchisee's business.

20.2 Federal Trade Commission Orders. Franchisee acknowledges receipt of copies of FTC Orders No. 8816 and C-2305 and Franchisee agrees to adhere to the provisions of these Orders in its dealings with the public and with AAMCO.

21.1 Jurisdiction. This Franchise Agreement shall be deemed to have been made within the Commonwealth of Pennsylvania and shall be interpreted according to the laws of Pennsylvania. The Franchisee hereby agrees that mailing to his last known address by certified or registered mail of any process shall constitute lawful and valid process. Franchisee further agrees to the jurisdiction and venue of any proper court of general jurisdiction in either Philadelphia County, Pennsylvania, Montgomery County, Pennsylvania or in the county in which AAMCO has its principal place of business. The Franchisee more particularly agrees to the jurisdiction and venue of the United States District Court for the Eastern District of Pennsylvania with respect to any proceedings which arise out of this Agreement or its performance.

21.2 Jury Trial Waived. The Franchisee and AAMCO hereby agree that they shall and hereby do waive trial by jury in any action proceeding or counterclaim, whether at law or at equity, brought by either of them, or in any matter whatsoever which arises out of or is connected in any way with this Franchise Agreement or its performance.

21.3 Severability. In the event that any portion, term or provision of this Franchise Agreement shall be decided by any court to be in conflict with the law of a state or jurisdiction, then the validity of the remaining portions, terms or provisions shall not be affected; the illegal part, term or provision shall be deemed not to be a part of this Agreement and this Agreement shall be construed as if the provision had never been a part of it.

21.4 Notice. Whenever this Franchise Agreement requires notice, it shall be in writing and shall be sent by registered or certified mail, return receipt requested to the other party at the addresses set forth below, unless notice is given of a change of address.

21.5 Recovery of Costs and Attorneys' Fees. In any court action or arbitration proceeding brought by either party hereto, arising out of or based upon this Agreement, all court costs, attorneys' fees and other expenses related to any claim on which a party prevails shall be paid to that party by the non prevailing party.

22.1 Arbitration.

(a) All disputes, controversies or claims arising out of or relating to the following matters shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association:

(1) Disputes concerning adjustments and/or deductions made by AAMCO from Franchisee's security deposit to settle customer complaints arising from the operation of Franchisee's shop;

(2) Disputes concerning Franchisee's responsibility for warranty work, the payment therefor and all other aspects of AAMCO's intershop program;

(3) Disputes concerning Franchisee's participation in national and/or local advertising programs, including but not limited to, Franchisee's responsibility for payment of national and/or local advertising contributions;

(4) Disputes concerning Franchisee's payment of resale commissions or other commissions to AAMCO.

A judgment upon the award may be entered in any court having jurisdiction thereof.

(b) The parties shall select one arbitrator from the panel provided by the AAA, and the arbitrator shall refer to the laws of Pennsylvania for interpretation and enforcement of the agreement. In all cases, the rules of the AAA shall apply, with the parties agreeing that they shall be interpreted liberally so as to insure full disclosure of all aspects bearing on the dispute, controversy or claim in question.

(c) The arbitrators' determination shall not be admissible in any other proceeding or for any other purpose, except in a proceeding to enforce said specific and final award or decision of the arbitrator.

(d) Notice of demand for arbitration of any matter governed by this section shall be served by the party so demanding within six (6) months after the occurrence giving rise to said demand by certified mail, return receipt requested, to the address listed below.

23.1 Entire Agreement. This Franchise Agreement consisting of 7 pages and attachments contains the entire agreement between the parties concerning the Franchisee's AAMCO franchise; no promises, inducements or representations not contained in this Agreement shall be of any force or effect, or binding on the parties. Modifications of this Agreement must be in writing and signed by AAMCO.

IN WITNESS WHEREOF, the parties intending to be legally bound hereby, hereto have set their hands and seals as of the day and year first above written.

ATTEST:                          AAMCO TRANSMISSIONS, INC.

_____    By: _____ (SEAL)

_____                  _____ (SEAL)
WITNESS                          FRANCHISEE   James M. Dunlap

_____ (SEAL)
Russell L. Blackburn
Address for AAMCO Transmissions, Inc.
408 East Fourth Street
Bridgeport, PA 19405   600 Windsor Lake Place      Address for Franchisee:
                      Virginia Beach, Virginia      4117 Portsmouth Boulevard
                      23452                   Portsmouth, Virginia 23701

AT-80-2 (10)                    (7)

AMENDMENT TO FRANCHISE AGREEMENT

WHEREAS, James M. Dunlap has entered into a Franchise Agreement with AAMCO Transmissions, Inc. dated June 5, 1981 for a center at Norfolk/Virginia Beach/Portsmouth, Virginia/North Carolina and,

WHEREAS, all parties to the Franchise Agreement wish to amend Paragraph 10 of said Agreement.

NOW THEREFORE, for good and valuable consideration it is hereby agreed:

"Franchisee hereby acknowledges that he is already the owner-operator of an AAMCO Transmissions Center at

4117 Portsmouth Boulevard
Portsmouth, Virginia  23701

and that this Agreement constitutes an additional franchise. Should any of the existing AAMCO centers operated by James M. Dunlap including the center which is subject of this Agreement, close or cease operation for any reason, the Franchisee agrees that all intershop guarantee work done on vehicles originally repaired at the closed center become the obligation and will be honored by the remaining center as though the work was originally performed by that center."

IN WITNESS WHEREOF, the parties intending to be legally bound hereby, hereto have set their hands and seals this 5th day of June, 1981.

ATTEST:

_____
Assistant Secretary

AAMCO TRANSMISSIONS, INC.

By: _____ (SEAL)

_____

_____ (SEAL)
FRANCHISEE  James M. Dunlap

ADDENDUM FOR EXISTING CENTER


This payment of $12,500.00 AAMCO service and license fee and the granting of this franchise is contigent upon James M. Dunlap and Russell L. Blackburn owning, maintaining and operating and AAMCO Transmission Center in Norfolk/Virginia Beach/Portsmouth, Virginia/NC   SMSA pursuant to this franchise agreement for a minimum of five years.

In the event that this franchise agreement or the assets of the AAMCO center operating in accordance with this franchise aggreement is sold, transferred or signed within the aforementioned five year period, then  James M. Dunlap and Russell L. Blackburn hereby agrees and acknowledges   their   responsibility to pay to AAMCO Transmissions, Inc. the additional sum of $10,000.00 in full and total payment of the AAMCO service and license fee.


ATTEST:                                      AAMCO TRANSMISSIONS, INC.

_____                      _____

WITNESS:

_____                      _____
                                             FRANCHISEE  James M. Dunlap

                                             _____
DATED:    June 5, 1981                       FRANCHISEE  Russell L. Blackburn

AAMCO TRANSMISSIONS, INC.
Sign Lease Agreement

1. **Lease of Sign.** Franchisor hereby leases the sign to the Franchisee for so long as the Franchise Agreement is in effect, commencing with the date of delivery of the sign to Franchisee.

2. **Rental.** Franchisee shall pay to the Franchisor as rent for the use of the sign $400.00 per year, payable quarter-annually in advance, the first payment of $100.00 to be made upon delivery of the sign and each subsequent payment shall be made quarter-annually thereafter. Any default in the payment of rent shall be treated in the same manner as a default in the payment of franchise fees, except that the remedy provided in paragraph 5 below shall be in addition to and not in lieu of any other remedy available to the Franchisor under any other document for such default in payment of fees.

3. **Installation.** The sign shall be installed by Franchisee at such place as Franchisor shall determine, and the Franchisee shall not move the sign without first receiving written permission from the Franchisor.

4. **Title.** The Franchisee shall have possession of the sign only during the term of the Franchise Agrement and title to the sign shall be and remain in the Franchisor at all times.

5. **Right of Entry and/or Repossession.** If, for any reason, Franchisee should be in default of his obligations hereunder or in his obligations under the Franchise Agreement or any stipulation signed by Franchisee, Franchisor shall have the right to enter upon the premises of Franchisee at any hour -- not just Franchisee's business hours -- to take possession of the sign leased hereunder. Franchisee agrees that Franchisor shall not be required to obtain prior permission to enter upon the premises and remove the sign. Franchisee hereby grants Franchisor the limited power of attorney to obtain an order and judgment in Franchisor's behalf in any court of competent jurisdiction that orders and authorizes the entry of Franchisor on the premises and the removal of the sign. Franchisee further agrees that if Franchisor is forced to resort to this procedure by any interference with the Franchisor's rights hereunder or for any other reason, Franchisee shall pay all attorney's fees and other costs associated with Franchisor's obtaining such order and judgment on its behalf.

6. **Default.** The occurrence of any of the following shall constitute an event of default hereunder.

(a) Failure of Franchisee to pay when due any installment of rent hereunder or any other sum herein required to be paid by Franchisee.
(b) Franchisee's failure to perform any other covenant or condition of this Sign Lease Agreement or the Franchise Agreement or Stipulation.

Any default hereunder shall constitute and be considered a default of the Franchise Agreement, wherefor Franchisor shall be entitled to the enforcement of any and all rights under said Franchise Agreement or this Agreement.

7. **Repairs.** The Franchisee shall keep the sign in the same condition as when delivered and shall make all necessary repairs in order to maintain such condition. The Franchisee shall be responsible for any damage to the sign and shall pay the Franchisor at Franchisor's option the current replacement cost of the sign if destroyed or the cost of repairing the damage. If the Franchisee shall fail to make any necessary repairs, Franchisor shall have the right to repair the sign on the premises, or off the premises if Franchisor resorts to its repossession under paragraph 5 for the purpose of repairing the sign. Franchisee shall pay to the Franchisor as additional rent the cost of such repairs or the current replacement cost, to be paid in one sum along with the next quarterly rental payment. Franchisee agrees that his rental fee obligations under paragraph 2 for the period of time under paragraph 1 shall continue even though the sign is damaged or destroyed.

8. **Transfers or Encumbrances.** Franchisee shall not pledge, loan, mortgage or part with possession of the sign or attempt in any other manner to dispose of it, or remove the sign from the present location, or suffer any liens or legal process to be incurred or levied upon it.

SLA 81-1 (1)

9. <u>Return.</u> At the end of the term of this lease, the Franchisee shall return the sign to the Franchisor at the Franchisor's place of business in the same condition as when received. If Franchisee fails to return the sign the Franchisor may, by his agents, take possession of the sign, with or without process of law, and for this purpose may enter upon any premises of the Franchisee without liability and remove the sign in the manner provided in paragraph 5 above.

IN WITNESS WHEREOF, the parties intending to be legally bound hereby, hereto have set their hands and seals as of the day and year first above written.

AAMCO TRANSMISSIONS, INC.

ATTEST: _____   BY: _____ (SEAL)

DATED: June 5, 1981   _____ (SEAL)
Franchisee   James M. Dunlap

_____ (SEAL)
Franchisee   Russell L. Blackburn

SLA 81-1           (2)

AMENDMENT AGREEMENT

This Amendment Agreement is made as of this _14_ day of _Novemba_, 1988 by and between AAMCO Transmissions, Inc. ("ATI"), Franchisor, and _J.M. Dunlap/R.L. Blackburn_ ("Franchisee") and is intended to amend the Franchise Agreement dated _June 5, 1981_ ("Franchise Agreement"), pursuant to which Franchisee was authorized to operate and has operated an AAMCO Transmission repair center located at _1366 S. Military Hwy_.
Chesapeake, VA   23320

NOW, THEREFORE, for and in consideration of the mutual promises and covenants contained herein and intending to be legally bound hereby, the parties agree that the Franchise Agreement is amended as follows:

1. Franchisee reaffirms the substantial value and good will associated with the trademark "AAMCO" and reaffirms his commitment to the continued growth and development of the AAMCO system.

2. [struck through text]

3. Section 1.3 Market of the Franchise Agreement is changed to read 100,000 motor vehicle registrations.

4. Section 4.2 Franchise Fee of the Franchise Agreement is changed to read five percent (5%) of the gross receipts for the preceding week. This franchise fee shall remain in effect upon renewal, resale or assignment of the franchise by Franchisee.

5. The fourth paragraph of Section 6.1 Obligations of AAMCO of the Franchise Agreement is deleted and the following is added:

AAMCO agrees to assist Franchisee by providing Technical Consulting services for use by all franchisees. These services shall include Technical Hot Line Department, Publication of Technical Advisory bulletins, Publication of Technical Bench tips, Publication of Technical Bench notes, Publication of Technical columns in the Twin Post, Production of video training films, the availability of the Rebuilders Academy and additional in-house only training seminars. AAMCO further agrees that the ratio of the Technical Department's expenditures to franchise fee revenue for the provision of said services as of the date of implementation of this Amendment Agreement will be the minimum ratio maintained for the provision of these services. AAMCO further agrees to assist Franchisee by providing limited operations consulting services to all franchisees.

6. Section 22.1 of the Franchise Agreement is deleted and the following is added:

22.1 Mediation and Arbitration

(a) Non-binding mediation of disputes, controversies, or claims arising out of or relating to this Agreement shall be conducted in Philadelphia, Pennsylvania or in Chicago, Illinois, solely at Franchisee's option.

(b) All disputes, controversies or claims arising out of or relating to this Agreement shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association or its successor except for termination by AAMCO which is based in whole or in part, upon the fraudulent acts of Franchisee or Franchisee's failure to deal honestly and fairly with any customer of the center or Franchisee's failure to accurately report his gross receipts to AAMCO. Arbitration shall be conducted in Philadelphia, Pennsylvania, unless otherwise agreed to by the parties.

7. (a) Except as set forth in paragraph 7 (c) below, Franchisee and ATI hereby irrevocably and unconditionally remise, release and forever discharge the other of and from all actions, causes of action, suits, claims and demands and covenants, whatsoever in law or in equity, whether known, unknown or unanticipated, which either Franchisee or ATI ever had or now has against the other, including but not limited to, those based upon, related to or connected with: (1) the Franchise Agreement; (2) any actions taken by the other under the Franchise Agreement; (3) the relationship between ATI and Franchisee; (4) anything forbidden or declared unlawful by the antitrust laws of the United States, included but not limited to, violations or claimed violations of the Clayton or Sherman Acts, or any other statute of the federal government or of the several states, whether such claims pertain to the intentional or unintentional act of the other or claims of negligence; or (5) anything forbidden or prohibited by state antitrust laws, state deceptive trade practices acts or state consumer protection acts.

(b) Except as stated in paragraph 7 (c) below, Franchisee and ATI agree that the Release set forth in this paragraph 7 shall apply to any and all claims up to and including the effective date of this Amendment Agreement.

(c) Franchisee specifically agrees that the following claims are EXCLUDED from ATI's release of Franchisee set forth in paragraph 7 (a) above: (1) any fixed claim for payment of franchise fees and other amounts presently due under the Franchise Agreement; (2) any claim relating to unfiled business reports due under the Franchise Agreement and franchise fees due thereon; (3) any claims by customers of Franchisee's center made against ATI; and (4) any claim that ATI may have against Franchisee for termination of the Franchise Agreement arising from Franchisee's fraud on customers or Franchisee's failure to deal fairly and honestly with his customers.

8. The parties agree that this Amendment Agreement shall be effective upon execution by all parties hereto and after at least 500 franchisees presently in the AAMCO system execute similar Amendment Agreements, at which time paragraph 4 hereof shall be implemented retroactive to the date of ATI's receipt at One Presidential Boulevard, Bala Cynwyd, Pennsylvania 19004 of this Agreement executed by Franchisee.

9. Except as specifically modified herein, all terms and conditions of the Franchise Agreement remain in full force and effect.

IN WITNESS WHEREOF, the parties have executed this Amendment Agreement effective as stated herein.

ATTEST: _____

Witness _____

AAMCO TRANSMISSIONS, INC.

By: _____  Date _____

_____  _____
Franchisee                Date
James M. Dunlap

_____  _____
Franchisee                Date
Russell L. Blackburn

Page 2 of 2