IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
CIVIL ACTION - LAW

| | | |
|---|---|---|
| AAMCO TRANSMISSIONS, INC. | : | |
|     Plaintiff, | : | |
|     v. | : | |
| JAMES M. DUNLAP | : | No. 2:11-cv-04009-BMS |
|     Defendant. | : | |

**PLAINTIFF'S MOTION FOR**
**PRELIMINARY INJUNCTION AGAINST DEFENDANT**

    Plaintiff, AAMCO Transmissions, Inc. ("ATI"), by and through its undersigned counsel, hereby moves this Court for a Preliminary Injunction against Defendant. This motion is based on the attached Memorandum of Law in Support of Plaintiff's Motion for Preliminary Injunction, the attached proposed order, affidavit of Brian O'Donnell and exhibits; all of which are incorporated herein by reference as though fully set forth. In addition, Plaintiff will rely on its case as presented at the preliminary injunction hearing for this matter.

                                                         Respectfully submitted,

6/22/11                                                    /s/William B. Jameson
DATE                                                 William B. Jameson, Esquire
                                                           Attorney for Plaintiff
                                                            AAMCO Transmissions, Inc.
                                                            201 Gibraltar Road, Suite 150
                                                            Horsham, PA 19044
                                                           (610) 668-2900

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
CIVIL ACTION - LAW

| | |
|---|---|
| AAMCO TRANSMISSIONS, INC. : | |
|     Plaintiff, : | |
| v. : | |
| JAMES M. DUNLAP : | No. 2:11-cv-04009-BMS |
|     Defendant. : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR PRELIMINARY INJUNCTION**

    Plaintiff, AAMCO Transmissions, Inc. ("ATI"), by and through its undersigned counsel, hereby sets forth this Memorandum of Law in support of its Motion for Preliminary Injunction against Defendant James M. Dunlap ("Dunlap"), as follows:

**I.    Introduction**

    This case arises from a franchise relationship between Plaintiff ATI, as franchisor, and Defendant Dunlap, a former franchisee whose franchise agreement has expired but who continues to operate his transmission repair business as an AAMCO Transmission Center from the former AAMCO location -- i.e., 1330 S. Military Highway, Chesapeake, VA 23320 (the "Center"). Plaintiff ATI now seeks injunctive relief enjoining Defendant Dunlap to de-identify with ATI and honor the post termination provisions set forth in the Franchise Agreement, including his non-compete obligation.

**II.    Procedural History**

    On June 20, 2011, ATI filed its Complaint alleging counts against Defendant Dunlap for trademark infringement, unfair competition, breach of contract and declaratory relief. In its Complaint ATI seeks monetary damages and injunctive relief against Defendant Dunlap.

### III. Factual History

Since at least 1963, ATI has continually used the name "AAMCO" as its trade name, trademark and service mark in connection with the operation of a network of transmission repair centers. *See* Affidavit of Brian O'Donnell at ¶3. It is the exclusive owner of its marks and maintains current registrations of the marks with the United States Patent and Trademark office. *Id*. at ¶ 4.

ATI is engaged in interstate commerce in, <u>inter alia</u>, the business of franchising or licensing others to use the mark and name "AAMCO" in the operation of transmission and general automotive repair centers throughout the United States and Canada. *Id*. at ¶ 5. There are approximately 800 AAMCO locations licensed or franchised by ATI to operate transmission repair centers under the "AAMCO" trade name and trademark. *Id*. at ¶ 6.

The "AAMCO" trade name and trademark have become universally associated with the repair of motor vehicle transmissions and the operation of transmission and general automotive repair centers. *Id*. at ¶ 7. As a result, ATI owns common-law trade name and trademark rights in the name "AAMCO" and other associated marks. *Id*. at ¶ 8. By virtue of the long use and promotion, and the resulting fine public reputation of the trade name "AAMCO", there exists a secondary meaning in the name "AAMCO". *Id*. at ¶ 9.

Large sums of money have been spent in advertising and promoting the services sold under ATI's trade name and trademarks, and today ATI has a substantial business and a long established goodwill associated with the name and the above marks in connection with the services provided under its trade name and trademarks. *Id*. at ¶ 10. ATI has a vital interest in protecting its trade name and trademarks and the preservation and protection thereof are essential

to the maintenance of ATI's quality transmission and general automotive repair centers and the goodwill and reputation associated therewith.  *Id*. at ¶ 11.

To supervise and control use of its trade name and trademarks, ATI has established standards and policies governing the quality of service to be provided to the public and has established procedures calling for the inspection of franchisees' centers to determine that the standards and policies are being followed.  *Id*. at ¶ 12.

On June 5, 1981, ATI and Dunlap entered into a franchise agreement, pursuant to which Dunlap was authorized to use the name and mark "AAMCO" in connection with the operation of the Center.  *Id*. at ¶ 13.  A copy of the Franchise Agreement is attached to O'Donnell's Aff. at Exhibit "A".  As part of the franchising process, Dunlap was provided access to ATI's proprietary system of doing business, including its trade secrets.  *Id*. at ¶ 14.  Dunlap attended and completed ATI's six (6) week training class wherein Dunlap was given in depth instruction on how to operate an AAMCO Transmission Center.  *Id*. at ¶ 15.  As such, Dunlap has been schooled in ATI's trade secrets and proprietary business procedures.  Defendant has additionally been given access to, and benefited from, ATI's technical assistance hot line, periodicals, technical bulletins, and special ATI programs.  *Id*. at ¶ 16.

During the time he operated the Center, Defendant Dunlap frequently failed to adhere to his contractual requirements such as timely reporting Center sales and paying fees due.  *Id*. at ¶ 17.  In letters dated, June 9, 2006 and August 3, 2006, after providing written notice to cure, ATI informed Defendant that his Franchise Agreement for the Center was terminated for failure to report sales and pay monies due and owing.  *Id*. at ¶ 18.  Dunlap ignored the letters and continued to operate the Center using ATI's trade name and marks.  *Id*. at ¶ 19.

On January 18, 2007, ATI brought suit against Defendant seeking to enforce the termination of the Franchise Agreement (the "Prior Litigation"). *Id*. at ¶ 20.  In a Settlement Agreement dated July 11, 2007, the Prior Litigation was settled and it was agreed that the Franchise Agreement would be reinstated for a period of time not to extend past June 5, 2011 while Dunlap made efforts to sell his Center and leave the AAMCO franchise system. *Id*. at ¶ 21.  A copy of the Settlement Agreement is attached to the O'Donnell Aff. at Exhibit "B". Notwithstanding his obligations under the Settlement Agreement, Dunlap did not sell his Center and exit the AAMCO franchise system. *Id*. at ¶ 22.

When Dunlap failed to cease operating the Center on June 5, 2011, ATI sent him a letter dated June 13, 2011, demanding that he comply with the post termination obligations of the Franchise Agreement including the covenant not to compete.  *Id*. at ¶ 23.  A true and correct copy of the said letter is attached to the O'Donnell Aff. at Exhibit "C".

Section 19.1(a) of the Franchise Agreement provides that, upon termination of the Franchise Agreement for any reason, Defendant shall:

> (b) Immediately and permanently discontinue the use of the mark AAMCO and all similar names or marks, and any other designation tending to indicate that the Franchisee is an authorized AAMCO franchisee.
>
> (c) Promptly destroy or surrender to AAMCO all signs, stationery, letterheads, forms, printed matter and advertising material containing the mark AAMCO, all similar names or marks or any other designation tending to indicate that Franchisee is an authorized franchisee of AAMCO.
>
> (d) Immediately and permanently discontinue all advertising as an authorized AAMCO dealer.
>
> (e)  Promptly transfer to AAMCO or AAMCO's designee each telephone number listed under the designation AAMCO or any similar designation, and execute such instruments and take such steps as AAMCO may require to accomplish the transfer of each such

telephone number.

*See* Franchise Agreement, § 19.1, Ex. "A" attached to O'Donnell Aff.

Section 19.1 also provides that Defendant shall:

> (g) Refrain from doing anything that would indicate that Franchisee is or ever was an authorized AAMCO dealer. Franchisee further agrees that for a period of 1 year following a termination of this Agreement he will not directly or indirectly engage in the transmission repair business within a radius of 10 miles of the subject center or any other AAMCO center.

*Id.* at § 19.1.

Despite the expiration of his franchise and his authorization to continue in the transmission business under and the AAMCO name, Defendant Dunlap has refused to abide by the post termination covenants of the Franchise Agreement. *See* O'Donnell Aff., ¶ 24. Specifically, Dunlap refuses to remove the AAMCO name and trademark from the Center and cease all use of ATI's systems and AAMCO merchandising materials there and, instead, has continued to operate a competing transmission repair business at the former Center location under the name and style "AAMCO Transmissions", to hold himself out to be an authorized ATI franchisee, and to use the AAMCO trade name and trademark, without any license or right whatsoever. *Id.* at ¶ 25. Defendant further continues to operate and control a website identifying his business at the former Center location as "AAMCO Transmissions." *Id.* at ¶ 26.

In addition, Defendant continues to refuse to turn over to ATI the telephone number, (757) 424-6444, and any other telephone number(s) which link to former and current local ads for "AAMCO Transmission". *Id.* at ¶ 27. Customers who consult their local Yellow Pages and other forms of advertising for the telephone number of the AAMCO Transmission Center nearest them may unknowingly ring into Defendant's competing business. *Id.* at ¶ 28.

6

Further, Dunlap continues to use AAMCO repair orders which purport to provide customers with an AAMCO warranty. Customers are being misled as to the validity of these warranties.

### IV. Argument

####    A.    General Standard – Preliminary Injunction

The standard for a preliminary injunction under Federal law is clear:

> When ruling on a motion for preliminary injunctive relief, a district court must consider four factors: (1) the likelihood that plaintiff will prevail on the merits at final hearing; (2) the extent to which plaintiff is being irreparably harmed by the conduct complained of; (3) the extent to which defendant will suffer irreparable harm if the preliminary injunction is issued; and (4) the public interest.

*Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc.*, 143 F.3d 800 (3rd Cir. 1998).

####    B.    ATI is Likely to Prevail on the Merits of Its Claims.

> i.    Trademark Infringement – ATI is likely to prevail because Dunlap continues to operate using the AAMCO mark without ATI's authorization to do so.

ATI is the exclusive owner of the AAMCO marks and Defendant Dunlap's use of these marks is permitted only through the Franchise Agreement. *See* O'Donnell Aff. at ¶ 29. Section 19.1(a) of the Franchise Agreement provides that, upon termination of the Franchise Agreement for any reason, Defendant shall:

> (b) Immediately and permanently discontinue the use of the mark AAMCO and all similar names or marks, and any other designation tending to indicate that the Franchisee is an authorized AAMCO franchisee.
>
> (c) Promptly destroy or surrender to AAMCO all signs, stationery, letterheads, forms, printed matter and advertising material containing the mark AAMCO, all similar names or marks or any other designation tending to indicate that Franchisee is an authorized franchisee of AAMCO.

      (d) Immediately and permanently discontinue all advertising as an authorized AAMCO dealer.

      (e) Promptly transfer to AAMCO or AAMCO's designee each telephone number listed under the designation AAMCO or any similar designation, and execute such instruments and take such steps as AAMCO may require to accomplish the transfer of each such telephone number.

*See* Franchise Agreement, § 19.1, Ex. "A" attached to O'Donnell Aff.

Notwithstanding ATI's repeated requests that Dunlap comply with his post termination obligations, Dunlap continues to operate under the AAMCO mark. Once a franchise is terminated, the franchisor has a right to enjoin unauthorized use of its trademark under the Lanham Act. *S & R Corp. v. Jiffy Lube Int'l*, 968 F.2d 371, 375 (3d Cir. 1992).

ATI is likely to prevail on its trademark infringement, unfair competition and breach of contract claims because the Defendant has ignored the termination of his Franchise Agreement and continues to operate under ATI's registered marks without any authorization to do so.

      ii.   <u>Non-Compete Covenant</u> – ATI is likely to prevail on its request to enforce the non-compete covenant because the covenant protects ATI's valid business interests.

By conducting a competing business from the former Center location, Dunlap has undeniably breached the post-termination covenant of his Franchise Agreement with ATI. Specifically, Section 19.1(g) expressly provides that Defendant shall:

> Refrain from doing anything that would indicate that Franchisee is or ever was an authorized AAMCO dealer. Franchisee further agrees that for a period of 1 year following a termination of this Agreement he will not directly or indirectly engage in the transmission repair business within a radius of 10 miles of the subject center or any other AAMCO center.

*Id.* at § 19.1.

The seminal Pennsylvania case outlining the law of non compete covenants as applied to

franchising arrangements is *Piercing Pagoda, Inc. v. Hoffner*, 465 Pa. 500, 351 A.2d 207 (1976). In *Piercing Pagoda*, the Pennsylvania Supreme Court held that

> Our Courts will permit the equitable enforcement of a covenant not to compete included in a franchise agreement where the restrictions are reasonably necessary for the protection of the franchisor without imposing undue hardship on the franchisee and the restrictions are reasonably limited as to duration of time and geographical extent.

351 A.2d at 212. In determining whether the non compete covenant was reasonably necessary, the Supreme Court in *Piercing Pagoda* focused on whether the said covenant served to protect a "legitimate business interest".

In this case, there can be no doubt that the covenant not to compete is protecting the valid business interests of ATI. *See* O'Donnell Aff. at ¶ 30. Business interests of franchisors that have been found to support the enforceability of a non-competition clause include: (a) the goodwill of the franchise; (b) the confidential and proprietary information associated with the franchise system; (c) the protection of other franchisees from unfair competition; and (d) the ability to secure another franchisee in or near the former franchisee's territory. *See, e.g.*, *Piercing Pagoda*, 351 A.2d 207 (1976); *Jiffy Lube Int'l, Inc. v. Weiss Bros., Inc.*, 834 F.Supp. 683 (D.N.J. 1993).

Goodwill. A franchisor has a protectable interest in the good will associated with its service mark, and a franchisor may suffer irreparable harm, for purposes of preliminary injunction, if the franchise agreement's non compete covenant is not enforced. *Novus Franchising, Inc. v. Taylor*, 795 F. Supp. 122, 130 (M.D.Pa. 1992); *Rita's Water Ice Franchise Corp. v. DBI Investment Corp.*, Bus. Franchise Guide (CCH) ¶10,918 (E.D.Pa. 1996); *McCart v. H&R Block, Inc.*, 470 N.E.2d 756 (Ind. App. 1984). Grounds for irreparable injury include loss of control of reputation and loss of good will. *Jiffy Lube Int'l, Inc. v. Weiss Bros., Inc.*, 834 F. Supp. 683, 692 (D.N.J. 1993). The interest of a business in protecting its established client base

9

has been found to be a valid business interest protectable by a covenant not to compete. *See*, *United Lab, Inc. v. Kuykendall*, 370 S.E.2d 375 (N.C. 1988); *see also*, *Domino's Pizza, Inc. v. El-Tan, Inc.*, 1995-1 Trade Cas. (CCH) ¶70,988 (N.D. Okla. 1995) (franchisor would suffer irreparable harm absent enforcement of covenant not to compete because customer confusion would result from the operation of a similar business by a former franchisee in the same area).

In this case, the Center location operated under the AAMCO trademark since 1982. *See* O'Donnell Aff., ¶ 31. Customers have come to know the now former Center location as AAMCO. *Id*. at ¶ 32. Moreover, the former Center location continues to be advertised in local Yellow Pages ads as "AAMCO." *Id*. at ¶ 33. ATI has a legitimate interest in protecting its good will in the Chesapeake market.

Confidential and Proprietary Information. A franchisor has a legitimate business interest in protecting itself from unfair competition by a former franchisee who has special, intimate knowledge of the franchisor's confidential operating methods. *Boulanger v. Dunkin' Donuts Inc.*, 815 N.E.2d 572 (Mass. 2004); *Watson v. Wafflehouse, Inc.*, 324 S.E.2d 175 (Ga. 1985); *Meineke Discount Muffler v. Jaynes*, 999 F.2d 120, 123 (5th Cir. 1993) ("Examples of legitimate, protectable interests include…trade secrets, and other confidential and proprietary information."); *Giampa v. Carvel Corp.*, Bus. Franchise Guide (CCH) ¶11,442 (D.N.J. 1998); *Minuteman Press Int'l, Inc. v. ANBAM, LLC*, Bus. Franchise Guide (CCH) ¶12,576 (E.D.N.Y. 2003).

In this case, Defendant has been trained in ATI's proprietary systems and has been provided its confidential information and material, trade secrets, and other unique methods, procedures and techniques developed by ATI. *See* O'Donnell Aff. at ¶ 34. Further, Defendant has retained, and is using ATI's proprietary software, manuals and other materials containing

ATI's marks, proprietary knowledge and trade secrets. *Id*. at ¶ 35. Dunlap is using his knowledge of ATI, its unique system of doing business and other confidential information in his competing business. *Id*. at ¶ 36. ATI has a legitimate interest in enforcing the non-compete covenant in order to protect its confidential and proprietary information from being used against it.

Protecting Franchisees From Unfair Competition. A franchisor has a legitimate interest in protecting its remaining franchisees from unfair competition. *Casey's General Stores, Inc. v. Campbell Oil, Inc.*, 441 N.W.2d 758 (Iowa 1989); *Armstrong v. Taco Time Int'l, Inc.*, 635 P.2d 1114 (Wash. App. 1981). A former franchisee that operates a business in contravention of a covenant not to compete has an unfair advantage in that it can take advantage of the knowledge and experience gained from the franchise relationship in its new business, without having to pay franchise fees for that information. *See*, Ted P. Pearce, et al., *The Enforcement of Post-Termination Remedies in the Franchise Contract*, 24 Okla. City U. L. Rev. 81, 95 (1999). Moreover, failing to issue a preliminary injunction where a former franchisee is unfairly competing in breach of a non compete covenant could be a clear signal to other franchisees that they can do the same, which could threaten the entire franchise system. *ATL Int'l, Inc. v. Barader*, Bus. Franchise Guide (CCH) ¶11,345 (D. MD. 1997).

In this case, Dunlap continues to operate from a long established AAMCO Center location armed with AAMCO signage, materials, advertised telephone number, trade secrets and proprietary information. *See* O'Donnell Aff. at ¶ 37. At the same time, Dunlap is no longer burdened with paying franchise fees or honoring AAMCO warranties. *Id*. at ¶ 38. Defendant's continued operation of a competing business from this location undeniably creates an unfair competitive advantage to Defendant. *Id*. at ¶ 39. Moreover, ATI has several other AAMCO

Transmission Centers in this market area. *Id*. at ¶ 40. If Defendant is permitted to flagrantly violate the non-compete covenant without penalty or recourse, ATI will not be able to police its own mark. *Id*. at ¶ 41. ATI has a legitimate interest in enforcing the non-compete covenant to protect its system and its franchisees from unfair competition.

Re-franchising. Franchisors have a valid business interest in re-franchising the territory of the former franchisee. *Piercing Pagoda*, 351 A.2d 207 (Pa. 1976). The presence of a former franchisee operating in the same area can act as a disincentive to potential franchisees, who would have to pay franchise fees to operate essentially the same business as the former franchisee, who may have already gained the business of a substantial portion of the market in that territory. *See*, *e.g.*, *Domino's Pizza, Inc. v. El-Tan, Inc.*, 1995-1 Trade Cas. (CCH) ¶70,988 (N.D. Okla. 1995) (franchisor would suffer irreparable harm absent enforcement of covenant not to compete because it would be unable to attract new franchisees to the area served by the former franchisee).

In this case, ATI's efforts to set up a new AAMCO Transmission Center in the Chesapeake area will be unfairly stymied as potential franchisees will not likely be willing to pay franchise fees to operate essentially the same businesses as the Defendant, who is already operating from a long established AAMCO location with AAMCO advertising. *See* O'Donnell Aff. at ¶ 42.

In breach of the non-compete covenant, Dunlap is competing with ATI from the former Center location using ATI's goodwill and proprietary information, creating a grossly unfair competitive environment and making it virtually impossible for ATI to re-franchise the territory. As such, ATI is entitled to injunctive relief enjoining the Defendant from further breach of his non-compete obligation.

### C. Defendant is Causing ATI to Suffer Irreparable Harm.

#### i. Trademark Infringement

The courts have long recognized that the franchisor's trademark is the "cornerstone" of a franchise system. *Susser v. Carvel Corp.*, 206 F.Supp. 636, 640 (S.D.N.Y. 1962), *aff'd*, 332 F.2d 505 (2d Cir. 1964), *cert. dismissed*, 381 U.S. 125 (1965); *Principe v. McDonald's Corp.*, 631 F.2d 303, 309 (4th Cir. 1980), *cert. denied*, 451 U.S. 970 (1981). The uniformity that franchisors seek to have associated with their trademarks is what "causes the public to turn to franchise stores for the product." *Susser*, 206 F.Supp. at 640. Accordingly, when one improperly uses the trademark of another, the courts will not let such action stand. As articulately stated by Judge Learned Hand:

> If another uses [the trademark of the owner], he borrows the owner's reputation whose quality no longer lies within his control. This is an injury even though the borrower does not tarnish it, or divert any sales by its use; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask.

*Yale Electric Corp. v. Robertson*, 26 F.2d 972, 974 (2nd Cir. 1928).

In this case, Defendant continues to display ATI's AAMCO mark on signage, forms, uniforms and other paraphernalia at the Center. *See* O'Donnell Aff. at ¶ 43. Further, Defendant continues to use the AAMCO advertised telephone number. *Id*. at ¶ 44. Succinctly stated, Defendant is misleading customers into believing that Defendant's competing business is a bona fide AAMCO Transmission Center when it is not. *Id*. at ¶ 45. Once the trademark holder establishes a likelihood of confusion, it is presumed that the trademark holder will suffer irreparable harm if the injunctive relief is not granted. *S & R Corp. v. Jiffy Lube Int'l*, 968 F.2d 371, 375 (3rd Cir. 1992); *Vision Sports, Inc. v. Mellville Corp.*, 888 F.2d 609, 612, n.3 (9th Cir. 1989), *citing*, *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1220 (9th Cir. 1987);

*Costandi v. AAMCO Automatic Transmissions, Inc.*, 456 F.2d 941, 942-3 (1972).

The Defendant has infringed upon ATI's trademark and is unfairly competing with ATI and its franchisees in violation of the Franchise Agreement. The Defendant's wrongful actions are causing irreparable harm to ATI that cannot be adequately addressed by money damages.

   ii. <u>Non-Compete Covenant</u>

The harm being inflicted upon ATI by reason of Defendant's continued operation of a transmission repair business at the former Center location is irreparable. *Novus Franchising, Inc. v. Taylor*, 795 F. Supp. 122 (M.D. Pa. 1992) (Holding that Franchisor would suffer irreparable harm, for purposes of a preliminary injunction, through damage to its good will and its ability to compete effectively in regional market if the restrictive covenant was not enforced.); *Maaco Enterprises, Inc. v. Bremner*, 1998 WL 669936 (E.D.Pa.) (Holding that the franchisor had no adequate remedy at law because it could not be adequately compensated for the harm inflicted on its relationships with its franchisees, its inability to re-franchise the defendants' trading area, and the deprivation and dilution of the consumer recognition and goodwill built up under the franchisor's trademarks, trade dress and business system over many years.); *Sparks Tune-Up, Inc. v. White*, 1989 WL 41321 (E.D.Pa.) (Holding that, because the violation of a covenant not to compete results in interference with customer relationships causing unquantifiable damages, such covenants are prima facie enforceable in equity.). Because the harm being inflicted on ATI is irreparable, a preliminary injunction should be issued.

 **D.** **<u>Defendant Will Not Suffer Undue Harm</u>**

   i. <u>Trademark Infringement</u>

Defendant Dunlap will not suffer harm from being precluded from exercising rights that he does not possess. As a result of the termination of Dunlap's franchise, he is no longer authorized

to use ATI's trademarks. *S & R Corp. v. Jiffy Lube Int'l*, 968 F.2d 371, 375 (3d Cir. 1992). Under the facts of this case, the harm to ATI by allowing the continued unauthorized use of its trademark undeniably outweighs the harm Defendant will suffer by being enjoined from further use of ATI's marks.

      ii.    <u>Non-Compete Covenant</u>

The covenant not to compete in this matter is a collateral term to a binding contract and supported by valuable consideration. There is no reason not to enforce the covenant in that any harm suffered by Defendant was brought on by himself as a result of his breach of the Franchise Agreement. *Maaco Enterprises, Inc. v. Bremner*, 1998 WL 669936, p. 5 (E.D. Pa.).

Moreover, the scope of the restrictive covenant is tailored to minimize the harm to Defendant. Under the covenant, Defendant is only precluded from engaging in the transmission repair business and only for a one year period within a ten (10) mile radius of the former Center and any other AAMCO location. Defendant is *not* prohibited in any way from engaging in any one of a myriad of other types of automotive repair businesses that his business is suited for, such as brake repair, engine repair, muffler repair/replacement, oil change and lube, etc. The requested preliminary injunction should issue because the harm inflicted upon ATI outweighs the potential harm to Defendant which is limited in nature.

    E.    **<u>The Requested Relief will Serve the Public Interest.</u>**

      i.    <u>Trademark Infringement</u>

The public interest will be served by issuing the injunctive relief requested in that customers who bring their vehicles to the Defendant's businesses will no longer be misled into believing that they are receiving repair services and warranties from a bona fide AAMCO Transmission Center, which they are not. *See* O'Donnell Aff. at ¶ 46.

    ii.  <u>Non-Compete Covenant</u>

  The public interest in this matter is best served by protecting the contractual agreement of the parties as embodied in the non-competition clause. *Novus Franchising, Inc. v. Taylor*, 795 F. Supp. 122, 132 (M.D. Pa. 1992).

**V.** **<u>Conclusion</u>**

  Based on the forgoing arguments and authorities, Plaintiff ATI respectfully requests that, in connection with Defendant's activities at the Center, a Preliminary Injunction be issued enjoining the Defendant, his officers, agents, servants, employees and those persons in active concert or participation with him, as follows:

  A. from using in any manner, including without limitation on or in any signs, stationery, letterheads, forms, printed matter or advertising, the proprietary marks "AAMCO", "AAMCO Transmissions" or similar names or marks.

  B. from advertising or otherwise holding himself out, directly or indirectly, as an authorized franchisee of ATI or as being in any way sponsored by or connected or associated with ATI.

  C. from doing anything to cause potential purchasers of transmission repair services to believe that any services or repairs performed by Defendant or any business with which he is associated originate with ATI or are endorsed or sponsored by ATI.

  D. to deliver to ATI or to persons designated by the Court all materials, including without limitation signs, stationery, letterhead, forms, printed matter and advertising, which contain the proprietary marks "AAMCO", "AAMCO Transmissions", or similar names or marks.

  E. to transfer to ATI or at ATI's direction, each telephone number listed by him under the designation "AAMCO Transmission" or any similar designation, including the

telephone number (757) 424-6444, and execute any instruments and take such steps as may be necessary or appropriate to transfer each such telephone numbers, and if he shall fail to do so, that counsel for ATI be designated by the Court as his attorney-in-fact to execute such documents in his name and in his place.

  F. from engaging in, directly or indirectly, the transmission repair business within ten (10) miles of 1330 S. Military Highway, Chesapeake, VA 23320 or any other AAMCO Transmission Center.

  G. to serve on ATI within thirty (30) days after the issuance of the preliminary injunction, a report in writing, under oath, setting forth in detail the measures undertaken by Defendant to comply herewith.

         Respectfully submitted,

6/22/10            /s/William B. Jameson
DATE            William B. Jameson, Esquire
             AAMCO Transmissions, Inc.
             201 Gibraltar Road, Suite 150
             Horsham, PA  19044
             (610) 668-2900

IN THE COURT OF COMMON PLEAS
MONTGOMERY COUNTY, PENNSYLVANIA
CIVIL ACTION - LAW

| | |
|---|---|
| AAMCO TRANSMISSIONS, INC.        : | |
|     Plaintiff,                                          : | |
| v.                                                                : | |
| JAMES M. DUNLAP                                 : | No.  2:11-cv-04009-BMS |
|     Defendant.                                       : | |

**CERTIFICATE OF SERVICE**

William B. Jameson hereby certifies that he did serve on this  22nd  day of June, 2010, the attached Plaintiff's Motion for Preliminary Injunction, upon the Defendant via U.S. Mail, postage prepaid:

        James M. Dunlap
        1330 S. Military Highway
        Chesapeake, VA 23320


 6/22/10                                           /s/William B. Jameson
DATE                                              William B. Jameson, Esquire
                                          Attorney for Plaintiff
                                          AAMCO Transmissions, Inc.
                                          201 Gibraltar Road, Suite 150
                                          Horsham, PA 19044
                                          (610) 668-2900