**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AAMCO TRANSMISSIONS, INC., | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JAMES M. DUNLAP, | : | No. 11-4009 |
| Defendant. | : | |

**MEMORANDUM**

Schiller, J.                                                                                          July 22, 2015

The business relationship between AAMCO Transmissions and James M. Dunlap has finally reached a dead end. The continuing bad blood between the parties has resulted in litigation in three different courts over the past eight years. Presently before the Court is Plaintiff's motion to convert the preliminary injunction issued by this Court on August 16, 2011 into a permanent injunction, and to exonerate the $100,000 injunction bond. For the following reasons, Plaintiff's motion is granted.

## I.     BACKGROUND

On June 5, 1981, AAMCO and Dunlap entered into a Franchise Agreement (the "Agreement") that permitted Dunlap to operate an AAMCO transmission repair center in Chesapeake, Virginia. (Aug. 16, 2011 Mem. at 1-2.) The Agreement lasted for an initial term of fifteen years, with automatic renewal for another fifteen years if neither party gave written notice of termination. (*Id.* at 2.) Upon termination or expiration of the Agreement, Dunlap would immediately pay AAMCO any money owed, permanently discontinue the use of the AAMCO name and trademark, destroy or surrender any AAMCO signage, stationary, forms, or

advertising, and refrain from doing anything that would indicate that Dunlap is or ever was an authorized AAMCO dealer. (*Id.*)

By June 2006, the relationship between AAMCO and Dunlap was at a crossroads. AAMCO tired of Dunlap's continual failures to meet his obligations as a franchisee and informed him that it was terminating the Agreement. (*Id.* at 4.) When Dunlap continued to operate the Chesapeake AAMCO center, AAMCO sued Dunlap to enforce the termination. (*Id.*) AAMCO and Dunlap later settled the case. (*Id.*) Pursuant to the parties' settlement, AAMCO rescinded the termination of Dunlap's franchise agreement for the remaining term, in order to allow Dunlap to sell his AAMCO centers to third party purchasers. (*Id.*) However, rather than sell the Chesapeake center, Dunlap continued to operate it after the Agreement apparently expired on June 5, 2011. (*Id.*) Consequently, AAMCO sued Dunlap in this action for trademark infringement under the Lanham Act, breach of contract, and unfair competition. (Compl. ¶¶ 26-56.)

On August 16, 2011, this Court issued a preliminary injunction against Dunlap, prohibiting him from holding himself out as an AAMCO franchisee or using AAMCO's trademarks, signage, and telephone number. (Order Granting Prelim. Inj. ¶ 2.) However, this Court also required the parties to arbitrate their dispute over the expiration of the Agreement. (Aug. 16, 2011 Mem. at 18.) On December 9, 2013, the arbitrator ruled in favor of AAMCO and concluded that the Agreement had expired on June 5, 2011. (Pl.'s Mem. of Law in Supp. of Mot. to Convert the Prelim. Inj. into a Permanent Inj. and to Exonerate the Inj. Bond [Pl.'s Mem.] Ex. E at ¶ 3.) AAMCO now moves to convert the preliminary injunction into a permanent injunction and to exonerate the injunction bond. The Court held an evidentiary hearing on this motion on June 10, 2015.

2

## II.    STANDARD OF REVIEW

In determining whether to grant permanent injunctive relief, the court must consider whether (1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to the defendant; and (4) the injunction would be in the public interest. *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001). The injunctive relief "should be no broader than necessary to provide full relief to the aggrieved plaintiff." *McLendon v. Cont'l Can Co.*, 908 F.2d 1171, 1182 (3d Cir. 1990).

While "the court's power to grant injunctive relief survives discontinuance of the illegal conduct, the purpose of an injunction is to prevent future violations." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953). If the illegal conduct has ceased, the party seeking the injunction must prove "that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Primepoint, LLC v. PrimePay, Inc.*, 401 F. App'x 663, 664 (3d Cir. 2010); *see also McLendon*, 908 F.2d at 1182 ("A permanent injunction will issue only where a threat of harm exists, not just where potential harm exists."). However, the court must "beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is a probability of resumption." *United States v. Or. State Med. Soc'y*, 343 U.S. 326, 333 (1952).

## III.   DISCUSSION

### A.    Permanent Injunctive Relief

#### 1.    *Actual Success, Harm to Defendant, and Public Interest*

AAMCO has conclusively established three of the four factors necessary for this Court to grant permanent injunctive relief. First, AAMCO has actually succeeded on the merits. The

arbitrator determined that the operative agreement between AAMCO and Dunlap was the June 5, 1981 Franchise Agreement, which automatically renewed for a second fifteen-year term on June 5, 1996. (Pl.'s Mem. Ex. E at ¶ 3.) The Agreement between the parties thus expired on June 5, 2011. (*Id.*) Dunlap is precluded from relitigating the date on which the Agreement expired, as the issue was fully and fairly litigated and necessary to the arbitrator's decision. *See Elbaum v. Thomas Jefferson Univ. Hosps., Inc.*, Civ. A. No. 13-1538, 2013 WL 6239593, at *5 (E.D. Pa. Dec. 3, 2013) (prohibiting relitigation of arbitrator's finding as to when employee began accruing vesting years under retirement plan). Consequently, this Court concludes that AAMCO would prevail on its claims that Dunlap violated the terms of the Agreement by continuing to use AAMCO's trademarks after June 5, 2011. Therefore, AAMCO has shown actual success on the merits of its claims.

Second, a permanent injunction will do no harm to Dunlap. AAMCO simply asks that this Court prohibit Dunlap from holding himself out as an AAMCO agent or using AAMCO's trademarks. Given the arbitrator's ruling that the agreement between the parties expired in 2011, a permanent injunction would merely prevent Dunlap from engaging in conduct to which he has no legal right.

Third, a permanent injunction is in the public interest. The Court has already determined that injunctive relief will prevent confusion or deception among AAMCO customers, uphold the contractual rights and obligations of the parties, and maintain the viability of the franchise system. (Aug. 16, 2011 Mem. at 17.)

### 2.    *Irreparable Harm to Plaintiff*

The only remaining issue is whether AAMCO has proven that denial of a permanent injunction would cause it irreparable harm. Dunlap argues that since he is not currently holding

4

himself out as an AAMCO dealer, and has no desire to reopen the transmission center and resume using AAMCO's trademarks, the preliminary injunction is unnecessary and should be dissolved. (Tr. of Hr'g on Pl.'s Mot. to Convert [Tr.] at 6, 8.) In response, AAMCO argues that a permanent injunction is necessary not only to prevent Dunlap's future use of the AAMCO trademarks, but also to put the brakes on vexatious litigation over the underlying grounds for the preliminary injunction. (Tr. at 11-12.)

The Court concludes that AAMCO would suffer irreparable harm if the permanent injunction is not granted. AAMCO's potential injuries are not limited to the mere possibility that Dunlap might reopen the transmission center using the AAMCO trademarks. The essence of the irreparable harm caused by trademark infringement is the aggrieved party's loss of control over its business reputation and goodwill. *See Chips 'N Twigs, Inc. v. Chip-Chip, Ltd.*, 414 F. Supp. 1003, 1018-19 (E.D. Pa. 1976). Dissolving the preliminary injunction would impose a substantial burden on AAMCO to monitor continuously whether Dunlap is using its trademarks or holding himself out as a franchisee. This Court will not simply kick the can down the road and wait to see whether Dunlap resumes operation under the AAMCO name. Permanent injunctive relief is necessary to protect AAMCO's rights in its intellectual property and goodwill.

Furthermore, AAMCO is entitled to permanent injunctive relief regardless of Dunlap's inability or lack of desire to continue his association with AAMCO. Dunlap continued to use AAMCO's name and trademark after the Agreement had expired, and only ceased his conduct upon entry of the preliminary injunction. Dunlap cannot now defeat an order of injunctive relief through promises of voluntary cessation. *Cf. W.L. Gore & Assoc., Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1281 (Fed. Cir. 1988) (finding, in patent infringement case, defendant's cessation of infringement generally insufficient to deny injunction against future infringement). The mere fact

that Dunlap presently lacks the resources or desire to reopen his service center does not require AAMCO to make a U-turn and return for another injunction if Dunlap reverses course.

Finally, an entry of permanent injunctive relief promotes respect for the finality of judgments. At the evidentiary hearing, Dunlap asked this Court not only to dissolve the preliminary injunction, but to allow him to present additional arguments as to why the injunction had been improvidently granted. (Tr. at 14.) AAMCO has the right to rely on the finality of this Court's rulings, and no later grant of damages or a second injunction would compensate AAMCO for the cost and vexation of having to defend subsequent litigation over issues barred by *res judicata*. *See Signator Investors, Inc. v. Olick*, Civ. A. No. 99-4854, 2000 WL 276097, at *2 (E.D. Pa. Mar. 3, 2000). Dunlap must yield to the interests of judicial economy, avoidance of inconsistent legal obligations, and reliability and finality of judgments.

### B.        Exoneration of the Security Bond

Since AAMCO has prevailed and this case is now closed, this Court will exonerate the injunction bond.


## IV.        CONCLUSION

After numerous detours and side trips, it is finally time for this case to exit the docket. Accordingly, Plaintiff's motion to convert the preliminary injunction to a permanent injunction and to exonerate the injunction bond is granted. An Order consistent with this Memorandum will be docketed separately.